UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GINA STOLTZ                                                    CIVIL ACTION

VERSUS                                                        NO. 24-1814

PRUDENTIAL INSURANCE COMPANY                                   SECTION "O"
OF AMERICA

ORDER AND REASONS

Before the Court in this wage-dispute litigation is the motion[1] for summary judgment filed by Prudential Insurance Company of America ("Prudential") to dismiss the claims of Plaintiff Gina Stoltz. For the following reasons, the motion is **GRANTED**.

## I.    BACKGROUND

From February 8, 2021 until her voluntary resignation on April 19, 2024, Plaintiff Gina Stoltz was employed by Prudential as one of three Regional Directors at Prudential's Southern Financial Associates Firm in Metairie, Louisiana. In addition to a base salary, Stoltz's compensation included Quarterly Performance Bonuses and Quarterly Discretionary Bonuses. Prudential calculates a Quarterly Performance Bonus pool for each of its regional offices using a set formula. The management then splits the pool evenly between each Regional Director at that office location. The Quarterly Discretionary Bonuses are based on the Managing Director's

---

[1] ECF No. 36.

personal assessment of the Regional Directors he supervises and are subject to company approval.[2]

Quarterly Performance Bonuses are determined at the end of each quarter and are paid to the Regional Directors on a biweekly basis throughout the following quarter over six or seven pay periods. Although the same is now true of Quarterly Discretionary Bonuses, when Stoltz first began working at Prudential, Quarterly Discretionary Bonuses were paid in a lump sum at the end of the quarter. In March of 2022, Prudential informed Stoltz by email of its change in policy for Quarterly Discretionary Bonuses. Stoltz confirmed receipt of the email and understood that her continued employment with Prudential constituted acceptance of the change in policy. Thus, from August 12, 2022 throughout the remainder of her employment with Prudential, Stoltz was paid both her Quarterly Performance and Quarterly Discretionary Bonuses in installments on a bi-weekly basis throughout the following quarter.[3]

Stoltz's compensation was governed by the terms outlined in the Regional Director Compensation Administrative Guide ("2024 Compensation Guide"). According to the 2024 Compensation Guide, the specific terms pertaining to the earning and payment of Quarterly Performance and Quarterly Discretionary bonuses are identical. The 2024 Compensation Guide defined when, how, and under what

---

[2] ECF No. 38-1 ¶¶ 1-4 (Pl. Statement Uncontested Material Facts).
[3] *Id.* ¶¶ 5-7.

conditions Stoltz's bonuses would be earned, including the bonuses for the first quarter of 2024 that are the subject of this lawsuit. Stoltz received a copy of the 2024 Compensation Guide and had access to it via Prudential's internet site.[4]

The 2024 Compensation Guide explains that the Quarterly Performance Bonus is calculated "at the end of the quarter and paid out bi-weekly the following quarter." Similarly, it states the Quarterly Discretionary Bonus is "paid out biweekly over a period of 6 pay cycles following the completion of the MD quarterly evaluation period. Each of the 6 pay cycles will include two twelfths of the [Regional Director Quarterly Discretionary Bonus]. Please refer to Appendix A for payment date details." Appendix A is a color-coded payment table detailing when each Quarterly Performance and Quarterly Discretionary biweekly payment would be issued throughout 2024.[5]

The 2024 Compensation Guide cautions that "to earn and be eligible to receive the [Quarterly Performance Bonus] or the [Quarterly Discretionary Bonus], the Regional Director must remain employed, in good standing, and active with the company until the date that each payment is made." It further clarifies that "no compensation is ever earned or becomes wages unless, and until, the conditions precedent, calculations, and practices generating such commissions are fully completed in compliance with all applicable provisions governing such compensation, as well as relevant Prudential policies and procedures and applicable law."[6]

---

[4] *Id.* ¶¶ 8-10.
[5] *Id.* ¶ 11, 15.
[6] *Id.* ¶¶ 12-13.

Importantly, the section entitled "Leaving the Plan" warns that the "[u]nearned [Quarterly Performance and Quarterly Discretionary Bonus] payments" of any Regional Director who voluntarily resigns will "stop the last day the [Regional Director] is in the position." It further explains that Regional Directors who voluntarily resign during a quarter are "not eligible to receive any unearned and unpaid [Quarterly Performance] or [Quarterly Discretionary Bonus] from the prior quarter."[7]

On March 25, 2024, Stoltz received an initial version of the Statement of Management Compensation Components for the Regional Director ("1Q24 Compensation Statement"), which outlined her Quarterly Performance and Quarterly Discretionary bonuses for the first quarter of 2024. The document stated that her Quarterly Performance Bonus for the first quarter of 2024 was $23,871.54, which was the "portion of the pool [that] is divided among the Regional Director positions and paid out bi-weekly in the following quarter." [8] Quarterly Performance Bonus payments were set to be paid out on April 5 and 19, May 3, 17, and 31, and June 14 14 and 28. According to the 1Q24 Compensation Statement, the Quarterly Discretionary Bonus was still "TBD," and was set to be "allocated to the Regional Directors by the MD based on individual leadership and the results against goals and will be paid out in one lump sum after the MD quarter and evaluation has been

---

[7] *Id.* ¶ 14.
[8] *Id.* ¶¶ 19-22; ECF No. 36-10.

4

completed," which was due to an error in Prudential's template reflecting the old policy of paying the Discretionary Bonuses in a lump sum. The 1Q24 Compensation Statement also included qualifying language, however, that read: "[t]he compensation reflected in this statement will be earned and payable subject to the terms of the compensation plan(s) or bonus program(s) applicable to you." Stoltz did not receive the final version of the Compensation Statement for the first quarter of 2024 because she voluntarily resigned before the Discretionary Bonus approval process was completed.[9]

On April 10, 2024, Stoltz submitted to Prudential written notice of her voluntary resignation. Her notice stated that April 19, 2024, would be her last day of work. The following day, Stoltz contacted Prudential's Human Resources via email inquiring about the bonus payment procedures. A Prudential HR Director reconfirmed to Plaintiff the terms of the 2024 Compensation Guide.[10]

As she requested, Stoltz's resignation became effective on April 19, 2024. Per the terms of the 2024 Compensation Guide, while she was still employed at Prudential, Stoltz received Quarterly Performance Bonus payments on April 5 and April 19 for the preceding quarter. Stoltz did not receive payments for the remaining portion of the Quarterly Performance Bonus on May 3, 17, and 31, and June 14 and 28 because she was no longer employed by the firm. She also did not receive any

---

[9] *Id.* ¶¶ 19-22.
[10] *Id.* ¶¶ 23-24.

5

Quarterly Discretionary Payments for the first quarter of 2024, which were scheduled to be paid in six bi-weekly installments from May 17 onwards.[11]

Stoltz filed suit against Prudential in Louisiana state court, asserting claims for violation of the Louisiana Wage Payment Act ("LWPA"), breach of contract, and "[o]ther related causes of action and negligence to be determined at trial."[12] Stoltz seeks damages of $59,607.89 in unpaid bonuses, along with attorneys' fees and court costs and statutory penalties under the LWPA.[13] Prudential removed the case to this Court under diversity jurisdiction.[14]

Prudential now brings a motion for summary judgment seeking to dismiss Stoltz's claims. As Prudential sees it, there are no material facts in dispute. Rather, the case involves a single legal issue: whether Plaintiff was paid in compliance with the Louisiana Wage Payment Act, La. Rev. Stat. § 23:631, *et seq*. For the following reasons, Prudential's motion for summary judgment is granted.

## II.   LEGAL STANDARD

---

[11] *Id.* ¶¶ 25-26.

[12] ECF No. 1-1 (State Court Pleadings). Stoltz does not dispute that the breach of contract claim rises and falls with the LWPA claim. *See Savoie v. Pritchard*, 122 F.4th 185, 193 (5th Cir. 2024) ("'[T]he employers' failure to pay the full and proper compensation for services provided gives rise to an action for breach of contract for which the remedy is recovery of wages.'") (quoting *Grabert v. Iberia Par. Sch. Bd.*, 638 So. 2d 645, 647 (La. 1994)); ECF No. 1 n1.

[13] ECF No. 1-1. The LWPA provides that "any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages." La. Rev. Stat. R.S. 23:632(A).

[14] ECF No. 1.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In reviewing the record, 'the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Vote.Org v. Callanen*, 89 F.4th 459, 469 (5th Cir. 2023) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The Court "'resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.'" *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If, however, the nonmovant bears the burden of proof at trial on the dispositive issue, "'the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.'" *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (quoting *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994)). "'If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.'" *Guillot ex rel T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quoting *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012)).

## III.    ANALYSIS

The parties agree there are no material facts in dispute.[15] The only question for this Court to determine is whether Prudential has violated the LWPA in refusing to pay the remaining portion of Stoltz's Quarterly Performance Bonus, and her full Quarterly Discretionary Bonus, per the terms of the 2024 Compensation Guide. For the following reasons, the Court finds Prudential has not violated the LWPA.

Under the LWPA, when an employee resigns, an employer must "pay the amount then due under the terms of employment." La. Rev. Stat. 23:631(A)(1)(a). An employer may be liable for additional penalty wages and attorney's fees if it fails to comply with La. R.S. 23:631. *See* La. R.S. 23:632. The statute makes it unlawful for

---

[15] ECF No. 36-2 (Def. Statement Uncontested Facts); ECF No. 38-1 (Pl. Statement Uncontested Facts) (admitting each material fact).

an employment contract to require an employee to forfeit wages "actually earned" if the employee is discharged or resigns before the employment contract is completed:

> No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; **but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.**

 La. R.S. 23:634 (emphasis added).

"Incentive-based bonuses are considered wages under La. R.S. 23:634."[16] *Thorne v. Bard Peripheral Vascular, Inc.*, 2016 WL 3746148, at \*7 (E.D. La. July 13, 2016) (citing *Pender v. Power Structures, Inc.*, 359 So.2d 1321, 1323 (La. Ct. App. 4 Cir. 1978) ("The compensation that the employee is promised in bonuses forms part of the compensation for the employee's labor during the bonus period.")). But whether a bonus constitutes an "amount then due" by the employer to the employee under La. Rev. Stat. 23:631(A)(1)(a) is a mixed question of law and fact. *See Wiggins v. Coast Professional, Inc.*, 2015 WL 692921, at \*8 (W.D. La. Feb. 18, 2015) (citing *Batiansila*

---

[16] The Court notes that the LWPA was amended in 2024 to directly address commissions, incentive pay, and bonus. La. R.S. 23:631(E). Section 23:631(E) provides that "(1) For purposes of this Section and R.S. 23:634, compensation available in the form of commission, incentive pay, or bonus shall be considered an amount then due only if, at the time of separation, the compensation has been earned and not modified in accordance with a written policy addressing the commission, incentive pay, or bonus." The law became effective on August 1, 2024, which was after Stoltz filed her pleadings in state court and after the case was removed to this Court. ECF No. 1. Neither party has discussed whether the statutory amendment applies retroactively or affects the analysis here. Regardless, the Court finds that the plain text of § 23:631(E) is consistent with its analysis that Stoltz's bonus was not yet "earned" under the terms of the 2024 Compensation Guide when she voluntarily resigned from Prudential and therefore was not "an amount then due" after her resignation.

*v. Cardiovascular Sys.*, 952 F.2d 893, 896 (5th Cir. 1992)). The operative question is whether the bonus has been "actually earned" under § 23:634 and thus constitutes an "amount then due" under § 23:631(A)(1)(a). *See Thorne*, 2016 WL 3746148, at *7.

To determine whether the bonus was "actually earned" by the plaintiff bringing a claim to recover unpaid wages, the Court "must consult the terms of the employment agreement." *Id.*; *see also Gremillion v. Greene Tweed & Co. I., L.P.*, 2013-0684 (La. App. 1 Cir. 12/27/13) ("[T]he threshold issue we must decide is whether Greene Tweed's polic[ies] clearly and unambiguously establish how and *when* vacation is earned and allocated.") (emphasis in original). That is because La. R.S. 23:631, *et seq.* limits a plaintiff's recovery for unpaid wages to payments "then due under the *terms of employment.*" La. R.S. 23:631(A)(1)(b) (emphasis added); *see also Thorne*, 2016 WL 3746148, at *5 (explaining that the statute limits recovery to payments "due under the terms of an employment or compensation agreement at the time of discharge.").

Stoltz "does not dispute that Prudential's 2024 Compensation Guide provides a statement on how [she] was to be paid in 2024."[17] The 2024 Compensation Guide for the relevant period states that "no compensation is ever earned or becomes wages unless, and until, the conditions precedent, calculations, and practices generating such commissions are fully completed in compliance with all applicable provisions

---

[17] *Id.* ¶ 16.

governing such compensation, as well as relevant Prudential policies and procedures and applicable law."[18] The Guide specifies that "to earn and be eligible to receive the bonuses," the Regional Director must "remain employed, in good standing, and active with the company until the date that each payment is made."[19] And it cautions that for any Regional Director who voluntarily resigns, that employee's "Unearned [Quarterly Performance and Quarterly Discretionary Bonus] payments stop the last day the [Regional Director] is in the position" such that they are "not eligible to receive any unearned and unpaid [Quarterly Performance] or [Quarterly Discretionary Bonus] from the prior quarter."[20]

Prudential asserts, and the Court agrees, that there is no ambiguity in these terms. La. Civ. Code art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.") The Compensation Guide clearly explains that compensation is not "earned" until all conditions precedent are met under its policies, including that the employee remain employed by the company on the date the bonus payment is made. Again, Stoltz does not dispute that the 2024 Compensation Guide was the controlling policy during her tenure with Prudential.[21] And Stoltz admits that she resigned before the established dates when the bonuses at issue were to be earned

---

[18] *Id.* ¶ 13.
[19] *Id.* ¶ 12.
[20] *Id.* ¶ 14.
[21] *Id.* ¶ 16.

and paid under the 2024 Compensation Guide. Accordingly, the Court finds that the bonuses she seeks were not yet "earned" wages at the time of her departure from the firm under La. R.S. 23:634, and that Stoltz is therefore ineligible for a payout under La. R.S. 23:631.

Stoltz protests that the 2024 Compensation Guide violates the LWPA because Prudential is inappropriately structuring its compensation scheme to defer payment of bonuses by arbitrarily defining those bonuses as not-yet "earned" until paid. In other words, as Stoltz sees it, the bonuses were technically "earned" in the first quarter of 2024 when the labor was performed; thus, Prudential's policy of defining the bonuses as unearned until paid out in the following quarter is an "impermissible attempt to circumvent the LWPA's requirements."[22]

The Court disagrees. Courts interpreting the LWPA have upheld employers' policies that condition the earning of incentive-based compensation on the employee remaining employed and in good standing through the date the compensation is paid. For example, in *Avila v. Sanofi-Aventis*, the Louisiana Court of Appeals upheld an employer's compensation scheme in which year-end bonuses were paid over a three-year vesting period contingent on the employee's continued employment and acceptable performance requirements. 11-661 (La. App. 5 Cir. 3/13/12), 90 So. 3d

---

[22] Stotlz also asserts that Prudential's 2024 Compensation Guide violates the LWPA because it has separate policies for Regional Directors who are involuntarily terminated as opposed to those who voluntarily depart. Stoltz does not point to any support for her contention that the LWPA requires companies to have identical compensation policies for voluntary and involuntary terminations. The Court accordingly rejects this argument.

1132, 1137, *writ denied,* 2012-0813 (La. 5/25/12), 90 So. 3d 416. In that case, the court found that even though the plaintiff's "top work performance in 2008 was the primary reason for the bonus," the employer did not violate the LWPA by refusing to pay the remaining two-thirds of her bonus after she was terminated the following year because "there were additional conditions and qualifications" the employee needed to meet under the operative policies, including "continued employment and good standing." *Id.*

Such is the case here. Stoltz's receipt of her Q1 2024 bonuses was expressly conditioned on her continued employment and good standing with Prudential through the scheduled dates of payment. Her bonuses were not considered "earned" until she met "additional conditions and qualifications." *See id.* at 1136 (holding the "award was not yet 'actually earned' under LSA–R.S. 23:634, because all of the provisions of the eligibility criteria were met not at the time of her termination"); *Wiggins v. Coast Pro., Inc.*, 2015 WL 692921, at *6, 9 (W.D. La. Feb. 18, 2015) (holding LWPA claim would fail because the employer's "policies clearly provided that the [] bonus was not earned until pay out and that an employee must be employed on the date of pay out to receive the bonus"); *Hebert v. Ins. Ctr., Inc.*, 97-298 (La. App. 3 Cir. 1/7/98), 706 So. 2d 1007, 1011-12, *writ denied,* 98-0353 (La. 3/27/98), 716 So. 2d 888 (similar).[23] Prudential's compensation policies, under which bonuses are not earned

---

[23] *Morse v. J. Ray McDermott & Co.*, 344 So. 2d 1353, 1358 (La. 1976) is not to the contrary. In that case, the Louisiana Supreme Court held that a non-vesting provision "as applied" was unenforceable because the plaintiff was involuntarily terminated before the benefit could vest. The

until the employee meets additional conditions, do not violate the LWPA.[24] Stoltz's LWPA claim, and attendant breach of contract claim, therefore fail as a matter of law.

Accordingly,

**IT IS ORDERED** that Defendant Prudential Insurance Company of America's motion[25] for summary judgment is **GRANTED**. Plaintiff Gina Stoltz's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 9th day of July, 2026.

_____
BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

Court found the forfeiture clause contrary to "public policy[] and unenforceable, if sought to be applied in a circumstance where, by the unilateral act of the employer, the employee is prevented from performing his part of the bargain to complete vesting of deferred compensation benefits." In this case, however, Prudential did not unilaterally prevent Stoltz from receiving her unearned bonus; instead, she chose to voluntarily resign before the bonus was earned and paid out to her.

[24] In support for her contention that the bonuses at issue should be considered "earned" at the end of the quarter—and not, per Prudential's policies, when paid the following quarter—Stoltz points to statements made by her supervisor in his deposition testimony. ECF 38-5 (Depo. Patrick McCraw). According to Stoltz, the supervisor indicated that bonuses are, in fact, "earned" at the end of the quarter. But as already explained, the terms of the employment agreement determine whether a bonus was "actually earned" by a plaintiff bringing a claim under the LWPA. *See Thorne*, 2016 WL 3746148, at *7; La. R.S. 23:631 (plaintiff's recovery for unpaid wages is limited to payments "then due under the terms of employment"). And as already determined, Prudential's written policies regarding when the bonuses were "earned" are unambiguous. The supervisor's testimony—which, the Court notes, was qualified by a statement that he is "not part of setting that policy for Prudential"—does not override the written policy to which Stoltz agrees she was bound. Nor does the testimony even discuss the specific terms of the policy or the definition of "earned" under the LWPA. This argument is accordingly rejected.

[25] ECF No. 36.

14